**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: May 24, 2024.**

MICHAEL M. PARKER
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| deeproot CAPITAL MANAGEMENT, | § | |
| LLC ET AL.[1], | § | CASE NO. 21-51523-MMP |
| | § | |
| | § | |
| DEBTORS. | § | CHAPTER 7 |
| | § | JOINTLY ADMINISTERED |
| | § | |
| JOHN PATRICK LOWE, | § | |
| CHAPTER 7 TRUSTEE | § | |
| FOR THE BANKRUPTCY ESTATE | § | |
| OF THE JOINTLY ADMINISTERED DEBTORS, | § | |
| | § | |

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: *In re Policy Services, Inc.*, 21-51513 (2864), *In re Wizard Mode Media, LLC*, 21-51514 (3205), *In re deeproot Pinball LLC*, 21-51515 (0320), *In re deeproot Growth Runs Deep Fund, LLC*, 21-51516 (8046), *In re deeproot 575 Fund, LLC*, 21-51517 (9404), *In re deeproot 3 Year Bonus Income Debenture Fund, LLC*, 21-51518 (7731), *In re deeproot Bonus Growth 5 Year Debenture Fund, LLC*, 21-51519 (9661), *In re deeproot Tech LLC*, 21-51520 (9043), *In re deeproot Funds LLC*, 21-51521 (9404), *In re deeproot Studios LLC* , 21-51522 (6283), and *In re deeproot Capital Management, LLC*, 21-51523 (2638) (collectively, the **"Bankruptcy Cases"**).

1

| | | |
|---|---|---|
| **PLAINTIFF,** | § | |
| | § | |
| | § | |
| **V.** | § | **ADVERSARY NO. 23-05089-MMP** |
| | § | |
| **CARLILE PATCHEN & MURPHY, LLP,** | § | |
| **DENNIS J. CONCILLA, &** | § | |
| **ANDREW J. FEDERICO,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

---

## OPINION

**I.  INTRODUCTION**

The Court heard the *Defendants Carlile Patchen & Murphy, LLP's, Dennis J. Concilla's, and Andrew J. Federico's Motion to Dismiss* ("**Motion to Dismiss**," ECF No. 21)[2] and the *Defendants Carlile Patchen & Murphy, LLP's, Dennis J. Concilla's, and Andrew J. Federico's Alternative Motion to Transfer Venue* ("**Motion to Transfer**," ECF No. 22) filed by Defendants Carlile Patchen & Murphy, LLP, Dennis J. Concilla, and Andrew J. Federico (collectively, **Defendants**). In the Motions, Defendants move for dismissal based on lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) (as made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7004(a)). Alternatively, Defendants move to transfer the case to the U.S. Bankruptcy Court for the Southern District of Ohio under 28 U.S.C. § 1412. The Court finds that it may exercise personal jurisdiction over Defendants, and transferring venue to the Southern District of Ohio is not in the interest of justice nor more convenient for the parties.

---

[2] "ECF" denotes the electronic filing number.

2

## II.    JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1334, and the Standing Order of Reference of the United States District Court for the Western District of Texas, dated October 4, 2013. This is partially a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409.

## III.    BACKGROUND[3]

From 2012 until 2021, Robert J. Mueller ("**Mueller**"), sole principal and manager of the Debtors, engaged in a Ponzi scheme wherein he would take new investments in life settlements and debenture bonds and use the funds to pay dividends and interest payments to previous investors. Beginning in 2013, Mueller enlisted the help of Andrew Federico ("**Federico**") and Dennis J. Concilla ("**Concilla**"), who were then partners at Carlile Patchen & Murphy, LLP ("**CPM**"). CPM is an Ohio-based firm, and Federico and Concilla are licensed to practice law in Ohio, but both practice federal securities law for clients beyond Ohio's geographical borders—including clients in Texas. Mueller sought federal securities law advice from Federico and Concilla for the Debtor affiliate Policy Services, Inc.[4] Federico and Concilla were specifically brought on to advise Mueller regarding compliance with federal securities laws and the development of private placement memoranda for the dGRD Fund and the 575 Fund. To secure the engagement, Concilla traveled to San Antonio to meet with Mueller and his associates and sent an engagement letter

---

[3] For purposes of ruling on the Motion to Dismiss, the Court will treat the Trustee's uncontroverted facts as true, and conflicts between the facts contained in the parties' affidavits are resolved in favor of the Trustee. ***Bullion v. Gillespie***, 895 F.2d 213, 217 (5th Cir. 1990).

[4] Mueller, on behalf of Policy Services, LLC, signed an engagement letter with CPM. Over the course of the nearly decade-long representation, CPM would extend its legal services to the rest of the Debtor-related affiliates (collectively, the "**deeproot Entities**").

addressed to the deeproot Entities' San Antonio address. Federico and Concilla would later approve marketing materials for the deeproot Entities, send correspondence on behalf of the Entities to the Texas State Securities Board, and generally advise Mueller on the deeproot Entities' compliance with various federal and state securities laws.

The Ponzi scheme (and the Debtors) began to unravel in 2021 when the United States Securities and Exchange Commission filed suit against Mueller and the deeproot Entities for violating federal securities laws. As the proverbial shoe began to drop, the deeproot Entities filed a voluntary chapter 7 petition in this Court. CPM filed a proof of claim in the main bankruptcy case, seeking payment for legal services rendered in the summer of 2021.

John Patrick Lowe, Chapter 7 Trustee ("**<u>Trustee</u>**") in the Bankruptcy Cases, initiated this adversary action against Defendants, seeking damages for malpractice. The Trustee alleges that the Defendants knew or should have known that Mueller developed or operated a Ponzi scheme, that he was taking investor funds for himself, and that Defendants had insufficient controls in place to ensure that the deeproot Entities' actions matched the descriptions in the private placement memoranda. The Trustee further alleges that such actions and omissions provided the deeproot Entities with legal advice beneath the standard of care. Additionally, the Trustee seeks to either disallow or equitably subordinate CPM's proof of claim because CPM and its lawyers engaged in "inequitable conduct" by providing legal advice below the standard of care.

In response to the Trustee's Complaint, Defendants filed a Motion to Dismiss and an Alternative Motion to Transfer Venue. In the Motion to Dismiss, Defendants argue that this Court lacks personal jurisdiction over them. Defendants contend that as Ohio attorneys, Federico and Concilla could not reasonably have expected to be haled into court in Texas based on their actions,

4

and therefore this Court cannot exercise personal jurisdiction over them. Alternatively, Defendants argue that even if this Court may exercise personal jurisdiction over them, this Court should, in the interest of justice and for the convenience of the parties, transfer this adversary proceeding to the Southern District of Ohio, where Defendants reside.

## IV.   DISCUSSION

In its Motion to Dismiss, Defendants argue that even if Federal Rule of Bankruptcy Procedure 7004(f) permits nationwide service of process on them, the Trustee must still establish that the Court's exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. The Fifth Circuit, however, has held that where a U.S. resident is served pursuant to a nationwide service of process statute, exercising personal jurisdiction over such resident does not offend traditional notions of fair play and substantial justice. What's more, even if the Trustee had to establish that the exercise of jurisdiction was fair and reasonable, Defendants' actions (both pre- and post-petition) show purposeful availment of Texas such that this Court's exercise of personal jurisdiction over them would not offend traditional notions of fair play and substantial justice.

### A.  THE COURT MAY EXERCISE PERSONAL JURISDICTION OVER DEFENDANTS.

### i.   Bankruptcy courts may exercise personal jurisdiction where a U.S. resident-defendant is properly served via Fed. R. Bankr. P. 7004.

A bankruptcy court may exercise personal jurisdiction over a defendant where: (i) service of process was made in accordance with Federal Rule of Bankruptcy Procedure 7004 or Federal Rule of Civil Procedure 4, (ii) the bankruptcy court has subject matter jurisdiction over the action, and (iii) exercise of jurisdiction over the defendant is consistent with the Constitution and laws of

the United States. Fed. R. Bankr. P. 7004(f), (k); *In re Tipton*, 257 B.R. 865, 870 (Bankr. E.D. Tenn. 2010).

The Trustee served the Defendants pursuant to Bankruptcy Rule 7004(d), which states that "[t]he summons and complaint and all other process except a subpoena may be served anywhere in the United States." Rule 7004(f) further provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 FR Civ P made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

Fed. R. Bankr. P. 7004(f). Defendants were served with process via first-class mail. ECF Nos. 3-5.

In civil proceedings in federal court, parties typically accomplish service via Federal Rule of Civil Procedure 4, which only permits the personal jurisdiction via service of process over a defendant where the defendant is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). In other words, the jurisdictional analysis would be guided by the Texas long-arm statute applicable to Texas state courts and the 14th Amendment's Due Process Clause. Because this adversary proceeding falls under the "related to" jurisdiction of this Court, however, the Trustee may serve process via Federal Rule of Bankruptcy Procedure 7004.

The bankruptcy court's "related to" jurisdiction encompasses any proceeding where "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy…" *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995) (adopting the 3rd Circuit's

*Pacor* test for "related to" jurisdiction); *see also **Feld v. Zale Corp. (In re Zale Corp.)***, 62 F.3d 746, 752 (5th Cir. 1995) (agreeing with the 7th Circuit that § 1334 is "primarily intended to encompass tort, contract, and other legal claims by and against the debtor" and that "some nexus must exist between the related civil proceeding and the Title 11 case.").

The claims asserted by the Trustee in this case fall cleanly within this Court's subject matter jurisdiction. Beginning with the easiest, the claim objection/equitable subordination claim made against CPM's Proof of Claim is a "core matter" that falls within this Court's "arising under Title 11" subject matter jurisdiction. 28 U.S.C. § 157(b)(2)(B). While the state law legal malpractice claims do not "arise under" Title 11, the outcome of these claims could conceivably have a substantial impact on the assets of the estate, thereby triggering this Court's "related to" subject matter jurisdiction. The Defendants do not contest this Court's subject matter jurisdiction over this proceeding.

Because this Court has subject matter jurisdiction over the case, Bankruptcy Rule 7004's nationwide service of process statute applies. ***Owens-Illinois, Inc. v. Rapid Am. Corp (In re Celotex Corp.)***, 124 F.3d 619, 629-30 (4th Cir. 1997) ("We have determined that this case is properly in federal district court on "related to' jurisdiction under § 1334(b). The entire body of the Bankruptcy Rules, therefore, applies to this action."). *Contrast with **Doe v. Pub. Co. Acct. Oversight Bd.***, 2024 US DIST LEXIS 44055 (N.D. Tex. 2024) (denying personal jurisdiction over Public Company Accounting Oversight Board, a creature of the Sarbanes-Oxley Act, because the suit was based on the Constitution, for which there is no nationwide service of process statute); ***In re Toyota Hybrid Brake Litig.***, 2021 US DIST LEXIS 124918 (E.D. Tex. 2021) (denying personal jurisdiction because the plaintiff alleged violations of the Magnuson-Moss Warranty Act which

does not have a nationwide service of process statute, so the analysis was subject to the 14th Amendment state-specific personal jurisdiction analysis). Because Rule 7004 applies, so long as exercise of jurisdiction is consistent with the Constitution and laws of the United States, service of process on the Defendants allows this Court to exercise personal jurisdiction over them. Despite being a procedural rule, courts have routinely held that Bankruptcy Rule 7004 "endow[s] the bankruptcy court with nationwide personal jurisdiction." *Airport Blvd. Apts., Ltd. v. NE 40 Partners, L.P. (In re NE 40 Partners, Ltd.)*, 411 B.R. 352, 359 (Bankr. S.D. Tex. 2009) (following the Fifth Circuit's *Busch* and exercising personal jurisdiction over an Arizona defendant based on national minimum contacts).

Under *International Shoe* and its progeny, exercise of personal jurisdiction is consistent with the Constitution and laws of the United States where it "comports with traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A court must ask whether the defendant has "minimum contacts" with the relevant forum through which they "purposefully availed" themselves of the privilege of conducting activities in the forum, and separately whether exercise of jurisdiction would be unfair in that it offends "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-78 (1985).

While this inquiry is state-specific for cases where service of process was accomplished via Civil Rule 4, the Fifth Circuit has held that where Congress has permitted nationwide service of process, the relevant forum for the personal jurisdiction inquiry is the United States as a whole, and not the state in which the court sits. *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994); *Luallen v. Higgs*, 277 F. App'x. 402, 404 (5th Cir. 2008); *Double*

8

*Eagle Energy Servs., L.L.C. v. Markwest Utica Emg, L.L.C.*, 936 F.3d 260, 264 (5th Cir. 2019). From a constitutional standpoint, the due process limitation on personal jurisdiction would flow from the Fifth Amendment (applying to the federal government), instead of from the Fourteenth Amendment (applying to the states individually). To reiterate, when analyzing personal jurisdiction, all that a nationwide service of process statute does is *change the relevant forum* for the analysis from the state in which the federal court sits to the United States generally. The analysis proceeds by asking whether the defendants have minimum contacts with the United States generally, and whether the United States may exercise jurisdiction over the defendants fairly and justly. Therefore, where U.S. resident-defendants are properly served with process under Bankruptcy Rule 7004, the bankruptcy court may exercise personal jurisdiction over those defendants. The Defendants here, as Ohio residents, meet this test, and are therefore subject to the personal jurisdiction of this Court.

>    ii.    ***Busch*** **applies and this Court may exercise personal jurisdiction over Defendants.**

>    A) **Busch** *applies to adversary proceedings where defendants were served under Bankruptcy Rule 7004.*

Defendants contest the applicability of the Fifth Circuit's holding in ***Busch*** because that case used a different nationwide service of process statute. In ***Busch***, the Fifth Circuit permitted personal jurisdiction over an out-of-state law firm where the plaintiff sued and served under 15 U.S.C. § 78aa, a statute within the Securities and Exchange Act of 1934. Section 78aa permits nationwide service of process for claims based on violations of the Securities and Exchange Act. The Defendants argue that the holding in ***Busch*** applies *only* to proceedings brought under 15 U.S.C. § 78aa, or at least proceedings where the nationwide service of process statute is

constrained in a similar manner as § 78aa (by the type of claim). Such a reading, however, is not supported by the language of **Busch** nor the cases following it. At no point in **Busch** does the Fifth Circuit cabin its reading to § 78aa specifically, instead holding broadly that where a suit is based upon "a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States." **Busch** at 1258. The Fifth Circuit could have limited its holding to cases under § 78aa, to securities cases generally, or to cases where the nationwide service statute was limited to certain types of claims. It did not do so.

When presented with subsequent opportunities to address the scope of **Busch**, the Fifth Circuit has confirmed the broad language in **Busch** and applied the same standard to service under Bankruptcy Rule 7004. **Luallen v. Higgs**, 277 F. App'x. 402 (5th Cir. 2008) (applying **Busch** and allowing exercise of personal jurisdiction in a case brought under 15 U.S.C. § 78aa because it is a nationwide service of process statute); **Double Eagle Energy Servs., L.L.C. v. Markwest Utica Emg., L.L.C.**, 936 F.3d 260 (5th Cir. 2019) (applying **Busch** where defendants were served under Bankruptcy Rule 7004). Following **Busch**, this Court will apply the principles regarding nationwide service of process statutes in **Busch**, permitting personal jurisdiction over a U.S. resident-defendant served under Bankruptcy Rule 7004.

### B) **Busch** *remains good law.*

Defendants further argue that the Fifth Circuit has distanced itself from the holding in **Busch**, specifically referencing **Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Michigan**, 97 F.3d 822, 826 (5th Cir. 1996). In **Bellaire**, the court emphasized its disagreement with **Busch**, stating that it viewed "personal jurisdiction and service of process as conceptually distinct issues." **Id.** Despite this reluctant *dicta*, the court in **Bellaire** faithfully applied **Busch**, holding again that a

10

nationwide service of process statute grants personal jurisdiction over properly served U.S. resident-defendants. *Id.* Moreover, as referenced above, the Fifth Circuit later held firm to its nationwide jurisdictional forum rule in **Busch** with the holdings in **Luallan** and **Double Eagle Energy Services**, cases decided after **Bellaire**. Whatever misgivings the panel in **Bellaire** had about **Busch**, the principle that a nationwide service of process statute makes the relevant jurisdictional forum the United States has not been abandoned by the Fifth Circuit.

      C) **Douglass** *does not alter the analysis for nationwide service of process statutes set forth by* **Busch**.

Next, Defendants argue that notwithstanding the Fifth Circuit's opinions in **Busch** and **Double Eagle**, this Court must still ask whether exercising jurisdiction over the Defendants comports with traditional notions of fair play and substantial justice, implicitly arguing that the relevant forum would be Texas. To reach this conclusion, Defendants contend that the **Busch** test only addresses the "minimum contacts" portion of the analysis, and not the second portion, which asks whether exercise of jurisdiction comports with traditional notions of fair play and substantial justice.[5] Ignoring this, according to Defendants, improperly collapses the two-step jurisdictional inquiry and would result in two personal jurisdiction standards—one under the Fifth Amendment and one under the Fourteenth Amendment. Defendants point to the Fifth Circuit's recent *en banc* opinion in **Douglass v. Nippon Yusen Kabushiki Kaisha** as "roundly rejecting" a difference in standards between the two amendments. **Douglass**, 46 F.4th 226 (5th Cir. 2022). From **Douglass**, Defendants reason that Bankruptcy Rule 7004 cannot change the jurisdictional inquiry from one

---

[5] Even if this were true, Defendants have "minimum contacts" with Texas such that exercising jurisdiction over the Defendants would not offend traditional notions of fair play and substantial justice, as the Court discusses below.

asking whether it is fair to hale the Defendants into Texas specifically to one asking whether it is fair to hale the Defendants into the United States.

But as has been mentioned, all *Busch* does is make the relevant forum for the jurisdictional inquiry the United States, not an individual state. The personal jurisdiction analysis itself (the two-part minimum contacts and "fair play/substantial justice" test from *International Shoe* and its progeny) remains the same, simply swapping in the "United States" as the relevant forum, instead of "Texas" or "Ohio." A court first asks whether the defendants have minimum contacts with the United States. If the defendant does have such contacts, a court then asks whether it offends traditional notions of fair play and substantial justice for the *courts of the United States* to exercise jurisdiction over the defendants. The analysis has not collapsed into a single step, but simply changed the relevant forum for the full analysis. That being said, because of language in *Douglass* addressing a distinction between Fifth Amendment and Fourteenth Amendment due process, it's worth getting into the details of that case and why it doesn't reverse the holding in *Busch*.

In *Douglass*, representatives of U.S. sailors killed in a collision with a Japanese container ship in Japanese territorial waters sued the Japanese shipping company in U.S. federal court. 46 F.4th at 230-31. Because the plaintiffs sought claims under federal law (an admiralty claim), the Fifth Amendment Due Process Clause applied to the federal court's exercise of personal jurisdiction. Fighting a motion to dismiss for lack of personal jurisdiction, the plaintiffs in *Douglass* sought to convince the Fifth Circuit that because the Fifth Amendment is concerned with fairness for defendants rather than circumscribing state court jurisdiction, a distinct and more permissive standard is warranted. The plaintiffs in *Douglass* argued that for cases under the Fifth Amendment, the court should eschew the traditional distinction between general and specific

12

jurisdiction and adopt the older "continuous and systematic" standard articulated in ***International Shoe***. ***Id.*** at 235.

The Fifth Circuit in ***Douglass*** rejected the plaintiffs' argument, holding instead that the Fifth Amendment and Fourteenth Amendment personal jurisdiction tests mirror each other. ***Id.*** at 235-36. Key to the instant case, the Fifth Circuit held that "the Fifth Amendment due process test for personal jurisdiction requires the same 'minimum contacts' *with the United States* as the Fourteenth Amendment requires *with a state*." ***Id.*** at 235 (emphasis added). The court in ***Douglass*** was concerned with a different due process/personal jurisdiction test between the Fifth and Fourteenth Amendments and was clearly not concerned with the distinction between the relevant fora. ***Douglass*** did not permit exercise of personal jurisdiction over the Japanese shipping company-defendant because specific jurisdiction was unavailable, and the defendant did not have contacts with the United States so substantial as to render them "at home" (triggering general jurisdiction). ***Id.*** at 243. CPM's assertion that the holding in ***Douglass*** prevents any difference between the relevant forum based on a nationwide service of process statute is therefore incorrect. In fact, the ***Douglass*** court even points out that "[f]or federal claims filed in federal courts, of course, the relevant minimum contacts are those with the entire United States, not a forum state. The personal jurisdiction inquiry in a case served under Bankruptcy Rule 7004 similarly asks whether the defendant has "minimum contacts" with the United States, and further whether the exercise of jurisdiction by the courts of the United States would offend traditional notions of fair play and substantial justice. The tests under each amendment still "mirror" each other—the only difference is the relevant forum.

13

Defendants cite an Eleventh Circuit case for the holding that "[e]ven if a statute authorizes nationwide service of process, due process requires that the district court evaluate traditional notions of fairness and reasonableness, by weighing the burdens imposed on the summonsed parties against the federal interest, before exercising jurisdiction." *Managed Care Advisory Group, LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1158 (11th Cir. 2019).

To be clear, this is not the test under *Busch*: under a nationwide service of process statute, a court must ask whether it is fair and reasonable to subject the defendant to the courts of the United States, not any one state or court specifically. But even if this Court agreed with the Eleventh Circuit's reasoning, the Court need only read the next line of the opinion to reach an answer in the instant case. In *Managed Care*, the Eleventh Circuit continues: "However, when nationwide service is authorized 'it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern.'" *Id.* (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 938-39 (11th Cir. 1997). The court in *Managed Care* held that "there is nothing inherently burdensome about crossing a state line" and that exercising jurisdiction over out-of-state parties was fair and reasonable.

And the decision in *Managed Care*, although recent, is nearly five years old. Considering the post-COVID rapid growth of instant communication, virtual depositions, and virtual court appearances (all of which tend to lessen the constitutional burden on a defendant), the "constitutionally significant inconvenience" has become an even greater hurdle to clear. As this opinion explains below, Defendants' contacts with Texas would render jurisdiction fair and reasonable *even if* they had been served under Fed. R. Civ. P. 4(k)(1)(A) and required state-specific contacts. The firm's Ohio location does not make this Court's exercise of jurisdiction over them

14

unfair, and the inconvenience of litigating in Texas does not rise to a level of constitutional concern. Moreover, "[w]here, as here, Congress has provided for nationwide service of process, courts should presume that nationwide personal jurisdiction is necessary to further congressional objectives." *Republic of Panama*, 119 F.3d at 939. Such a presumption makes sense in a bankruptcy context: the bankruptcy objectives of efficient and expeditious resolution of all claims by and against a bankruptcy estate in a collective manner would weigh in favor of the presumption noted in *Panama*.

> D) *The fact that the action implicates Ohio legal malpractice law does not divest this Court of personal jurisdiction.*

Defendants argue that because adjudicating this adversary action requires application of Ohio legal malpractice law, this Court cannot exercise jurisdiction because Ohio attorneys providing legal services have "an eminently reasonable and deeply just expectation that any claimed errors in those services will be governed exclusively by Ohio law and adjudicated exclusively in Ohio courts." Def.'s Motion to Dismiss at 12. Defendants buttress their argument by pointing to the Supreme Court of Ohio's assertion that "it has been methodically and firmly established that the power and responsibility to admit and discipline persons admitted to the practice of law, to promulgate and enforce professional standards and rules of conduct, and to otherwise broadly regulate, control, and define the procedure and practice of law in Ohio rests inherently, originally, and exclusively in the Supreme Court of Ohio." *Shimko v. Lobe*, 813 N.E.2d

15

669, 673 (Ohio 2004). Defendants imply that Ohio's highest court believes legal malpractice actions implicating Ohio lawyers and law firms should only be heard in Ohio courts.[6]

But *Shimko* had nothing to do with legal malpractice. Instead, the case held that an Ohio Code of Professional Responsibility rule requiring binding arbitration of fee disputes did not implicate the jury trial rights of the attorney-plaintiff and was constitutional under the Ohio Constitution. Defendants appear to conflate Ohio's exclusive ability to regulate the profession of law via the establishment and enforcement of disciplinary rules with the separate tort of legal malpractice. If the Trustee had filed a grievance against CPM or sought the disbarment of Federico or Concilla, *Shimko*'s "exclusive" language might bear more weight. But the Trustee simply seeks to rectify legal wrongs committed by Ohio federal securities attorneys against Texas Debtors, and the fact that the standard for those legal wrongs may be Ohio law does not necessitate that Ohio courts adjudicate the action.[7]

Defendants' further citations are similarly inapposite. Defendants cite *Cobalt Multifamily* for the proposition that "with respect to the specific tort of legal malpractice, 'a state has a strong interest in regulating the conduct of a law firm [or lawyer] licensed to practice within its borders,

---

[6] Despite Defendants' insistence on *Shimko* designating the Supreme Court of Ohio as the exclusive forum for malpractice suits, Defendants undermine their own argument by filing the Alternative Motion to Transfer to the *federal bankruptcy court* in the Southern District of Ohio. Surely if Defendants' interpretation of *Shimko* were correct, venue transfer would not be permissible because the *federal* courts in Ohio also could not hear a legal malpractice action.

[7] The Court notes that Federico and Concilla offered to represent the deeproot Entities in *federal securities law* matters—not Ohio state law matters. The Debtors did not hire or use Defendants for any Ohio law expertise Defendants may have had. Defendants only offered federal securities law advice, so the suggestion that Ohio law will control issues raised in this litigation is uncertain. But even if it does, bankruptcy courts are well-versed in applying other states' laws. Defendants imply that lawyers regularly practicing in federal maters or in federal court, but only licensed in one state can only be sued or disciplined in their state of licensure. The Court knows this to be incorrect.

16

and a law firm [or lawyer] consents to be so regulated when it locates its offices in a particular state.'" *Cobalt Multifamily Investors I, LLC v. Shapiro*, 857 F. Supp. 2d 419, 431 (S.D.N.Y. 2012) (citations omitted). Even on plain reading, the cited language does not mean in this case that Ohio has the *exclusive* interest in adjudicating legal malpractice, merely that it has a *strong* interest. Moreover, the district court in *Cobalt Multifamily* was tackling a choice-of-law analysis using New York's "interest analysis," and was not using the state's interest to divest the court of personal jurisdiction. The rest of the cases cited by Defendants regarding Ohio's exclusive interest in adjudicating legal malpractice suits either reiterate that Ohio has *an* interest in the claim, or simply set forth the elements of a legal malpractice claim. *See Berger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718, 723 (6th Cir. 1993) (noting that "regulating of the legal profession is of great importance to Ohio" to abstain on *Younger*/*Middlesex* grounds due to ongoing *state bar disciplinary hearings* [not malpractice tort suits]); *Ramsey v. Reagan, Burrus, Dierksen, Lamon & Bluntzer, P.L.L.C.*, No. 03-01-00582-CV, 2003 WL 124206, at *4 (Tex. App. Jan. 16, 2003) (merely underlining that the standard of care for an attorney is determined in reference to the attorney's locality and affirming the trial court's exclusion of an expert witness-attorney who was not licensed in Texas); *McCarty v. Pedraza*, 17 N.E.3d 71, 75 (Ohio Ct. App. 2014) (setting forth the elements of legal malpractice and noting that the standard of care is that of "similarly situated" members of the legal profession).

Indeed, the Fifth Circuit has regularly permitted jurisdiction over out-of-state attorneys who provide legal services to Texas clients. *See, e.g., Busch v. Buchman, Buchman & O'Brien*, 11 F.3d 1255, 1257 (5th Cir. 1994) (allowing Texas personal jurisdiction over New York attorney who knew his New York work product would be received in Texas); *Streber v. Hunter*, 221 F.3d

17

701, 718-19 (5th Cir. 2000) (permitting jurisdiction over a Louisiana tax attorney who provided tax advice to a Texas client); *Trinity Industries v. Myers & Associates*, 41 F.3d 229, 230 (5th Cir. 1995) (finding jurisdiction reasonable over Illinois attorney who represented Texas company and occasionally visited Texas). The fact that Ohio malpractice law may be central to the Trustee's claims does not divest this court of personal jurisdiction.

Although Defendants may find it frustrating that a Texas federal bankruptcy court may exercise personal jurisdiction over them "because the plaintiff happens to be a bankruptcy trustee,"[8] such an outcome is an intended result of Bankruptcy Rule 7004's nationwide service of process statute. Bankruptcy proceedings are intended to be a collective forum to address all claims related to a debtor, avoiding piecemeal litigation across the nation. Therefore, this Court may exercise jurisdiction over Defendants if they were served under Bankruptcy Rule 7004.

> ### iii. Even if the Court could ignore Fifth Circuit precedent regarding nationwide service of process statutes, the Defendants have minimum contacts with Texas such that exercising jurisdiction over them would not offend traditional notions of fair play and substantial justice.

Defendants point to the Tenth Circuit's rejection of the Fifth Circuit's *Busch* "national contacts" standard for defendants served under nationwide service of process statutes in *Peay v. BellSouth Med. Assistance Plan* and urge this Court to adopt a similar approach. But even if this Court were not bound by *Busch*, Defendants' contacts with Texas are sufficient to render

---

[8] Defendant's Reply at 3.

18

jurisdiction appropriate both under the ***Peay*** standard *and* even if this case had been filed in the district court for the Western District of Texas under Civil Rule 4(k)(1)(A).

### A) The Court may exercise jurisdiction under the **Peay** standard.

In ***Peay***, the Tenth Circuit laid out a list of factors for courts to consider when analyzing the fairness of exercising jurisdiction in nationwide service of process cases. ***Peay*** involved ERISA claims made by a plaintiff in Utah federal court. The plaintiff received care in a Utah medical facility and was suing for a determination of benefits two out-of-state insurers located in Alabama and Georgia. ERISA claims are given nationwide service of process similar to how claims "related to" a bankruptcy proceeding are given nationwide service of process via Bankruptcy Rule 7004. The factors the Tenth Circuit asked courts to consider are as follows:

(1) The extent of the defendant's contacts with the forum;
(2) The inconvenience to the defendant of having to defend in the forum (including the nature and extent of the defendant's business, defendant's access to counsel, and the distance from the defendant to the forum);
(3) Judicial economy;
(4)  The probable situs of discovery proceedings and the extent to which discovery will take place outside the state of defendant's residence or place of business; and
(5) The nature of the regulated activity in question and extent of impact that the defendant's activities have beyond the borders of his state of residence or business.

***Peay v. BellSouth Med. Assistance Plan***, 205 F.3d 1206, 1212 (10th Cir. 2000). The Tenth Circuit in ***Peay*** repeated the oft-cited reference to ***Republic of Panama***, underscoring that only in "highly unusual cases" will the inconvenience rise to a level of constitutional concern.

### (1) The extent of the defendant's contacts with the forum

This factor weighs against dismissal. To begin, Defendants gave securities law advice they knew would be received in Texas by Texas entities, evidenced by Mueller's request to Defendants that the deeproot Entities be "transferred and set up in Texas, but with the ability to transact

nationwide." Pl.'s Ex. 4. Concilla himself (as a representative of the firm) visited San Antonio and met with Mueller and his associates, and then sent the engagement letter to a San Antonio address. Pl.'s Exs. 2 and 3. As partners of CPM, the minimum contacts of Federico and Concilla are imputed to CPM. Over the course of the representation, Defendants knew that they were providing services to a Texas entity, and even responded to inquiries from the Texas State Securities Board.

Defendants argue that they did not have sufficient contacts with Texas because they have no offices in Texas, do not own property in Texas, are not licensed to practice law in Texas, and have never represented a Texas entity in front of Texas state or federal court. In addition, Defendants note that they repeatedly urged Mueller to obtain local Texas counsel (although these recommendations did not appear to prevent Defendants from continuing to advise the deeproot Entities after they failed to obtain Texas counsel).

These facts raise straw arguments. When considering a defendant's contacts with a forum, a court should always consider how a defendant would have "structure[d] their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Defendants' actions show that they knew or should have known that they were providing legal advice to Texas entities, and that the provided advice would have repercussions within Texas. Concilla's physical presence in Texas is also strong evidence of contact with the forum, a contact which can also be imputed to CPM. An out-of-state defendant who provides continuing, regular services to a Texas entity is on notice that it could be subject to jurisdiction in Texas, even if the services were accomplished physically in Ohio. This factor weighs strongly against dismissal.

**(2) The inconvenience to the defendant of having to defend in the forum (including the nature and extent of the defendant's business, defendant's access to counsel, and the distance from the defendant to the forum)**

This factor, as stated, is neutral. But this factor, as stated, fails to weigh or consider the equal inconvenience to the plaintiff. From a physical standpoint, Ohio is far from Texas (over 1,000 miles). It would be more inconvenient for the Defendants to litigate this suit in Texas than it would be in Ohio. It would be equally inconvenient for the Trustee to litigate this adversary in Ohio. But as stated above, the availability of virtual conferencing, virtual court, and teleconferencing lessens the impact of physical distance and dampens the Defendants' and Plaintiff's ability to argue that the inconvenience rises to a constitutional level.[9] When considering inconvenience to both Defendants and the Plaintiff, this factor is neutral.

Moreover, CPM, Concilla, and Federico certainly have readily available access to counsel and are sophisticated enough to obtain local counsel in Texas if necessary. Although Defendants argue that they would be required to "incur significant costs to retain Texas counsel," the fact that local counsel would cost money is not significant enough to raise the inconvenience to a constitutional level. In addition, the nature and extent of Defendants' business would weigh against dismissal as well—the contacts discussion above highlights that Defendants understood that they were doing business with a Texas entity and that they could be subject to Texas jurisdiction. Thus, this factor is neutral or weighs slightly against dismissal.

---

[9] The Court notes that it allowed the Defendants to virtually argue this Motion to Dismiss and is well aware of the need for out-of-town counsel to minimize costs by maximizing the appropriate use of virtual appearances.

### (3) Judicial economy

This factor weighs heavily against dismissal. Defendants argue that because Ohio law will provide the relevant rule of decision for the malpractice claim, judicial economy is best served by dismissing this action and allowing the Trustee to refile it in Ohio state or federal court. Assuming without deciding that Ohio law provides the relevant rule of decision and overlooking the judicially uneconomic result of forcing a refiling of this action in a different state, it is unclear how judicial economy is harmed by this Court's application of Ohio law. This Court is often called upon to apply other states' laws in its rulings, and is capable of applying Ohio malpractice law, especially considering that the elements for legal malpractice under Texas law appear nearly indistinguishable from that of Ohio law.[10]

Additionally, this Court's familiarity with the related bankruptcy cases of the deeproot Entities, as well as over thirty-five other related adversary proceedings filed by the Trustee suggest economic efficiency favors this Court. This Court has the relevant knowledge of the facts of the bankruptcy and its causes and would have a "leg up" on an Ohio court seeking to enter the fray at this stage. Plus, even if this Court were to dismiss the malpractice claim and retain the objection to CPM's Proof of Claim, the resolution of the Proof of Claim appears dependent upon a ruling on the malpractice action. This factor weighs heavily in favor retaining jurisdiction.

---

[10] Ohio requires a legal malpractice plaintiff to show that 1) an attorney-client relationship gave rise to a duty, 2) the attorney breached that duty, and 3) damages resulted from that breach. *Vahila v. Hall*, 77 Ohio St. 3d 421, 427 (Ohio 1997). Texas law requires a showing that 1) the defendant-attorney owed the plaintiff a duty, 2) the attorney breached that duty, 3) the breach was the proximate cause of the plaintiff's injury, and 4) that damages occurred. *Gunn v. Minton*, 568 U.S. 251, 259 (2013) (citing *Alexander v. Turtur & Associates, Inc.*, 146 S.W.3d 113, 117 (Tex. 2004)).

22

### (4) Location of discovery

This factor is neutral. Both parties argue that discovery will likely occur within the border of their respective states. Defendants argue that because the alleged malpractice itself occurred in Ohio, the relevant documents and witnesses are in Ohio, favoring dismissal.

The Trustee argues that (i) it is unclear where the majority of discovery will be located because the parties have not made initial disclosures or exchanged witness lists, and (ii) some of the key witnesses are Texas residents:  Mueller, Mueller's deeproot associates, members of the Texas State Securities Board, and the Trustee.

Because key discovery will take place in both states, this factor is neutral. Defendants have not shown that the situs of discovery would pose a constitutionally significant inconvenience.

### (5) Nature of the regulated activity in question and extent of impact that the defendant's activities have beyond the borders of his state of residence or business.

This factor weighs against dismissal. As discussed above, the Defendants knowingly took advantage of the privilege of providing legal services to Texas entities. Concilla also wrote an email to Mueller in 2013 (preceding the representation) that CPM and its attorneys "routinely advise BD's and IA[11] including a few in Texas on audit, compliance, and recruiting issues." Pl.'s Ex. 4. CPM's securities legal advice and representation appears to regularly extend outside the borders of Ohio, even outside the contacts with Texas made in this case. It should therefore not be unreasonable to expect CPM and its attorneys Concilla and Federico to be amenable to suit in the

---

[11] Based on the context of the email, "BD" appears to refer to "broker-dealer" for securities. It is unclear what "IA" stands for, but venturing a guess, it could be "investment analyst."

jurisdictions where they have provided legal services in the past. This factor weighs against dismissal.

In conclusion, none of the ***Peay*** factors favor dismissing this case for lack of personal jurisdiction. Even the Tenth Circuit in ***Peay*** held that the Alabama and Georgia defendants did not show that it was unfair to subject them to the jurisdiction of a Utah federal court, because there was no evidence that the defendants would be at a "severe disadvantage compared to plaintiffs." The same is true here. Defendants have failed to show that the inconvenience of litigating in Texas amounts to a constitutional significance, and that the exercise of jurisdiction by this Court would rob them of their due process rights. For these reasons, the Court will deny Defendants' Motion to Dismiss.

> B) *Had this case been filed and served under Civil Rule 4(k)(1)(A) in federal district court instead of under Bankruptcy Rule 7004 in bankruptcy court, the exercise of personal jurisdiction over Defendants would still be permitted.*

Had the Trustee filed this case in the District Court for the Western District of Texas as a diversity action and served process to Defendants under Civil Rule 4(k)(1)(A),[12] personal jurisdiction would *still* be permitted because Defendants have sufficient minimum contacts with Texas to render jurisdiction fair and reasonable.

---

[12] Defendants assert that the Fifth Circuit's use of the United States as the relevant forum for nationwide service of process cases is unconstitutional. Def.'s Motion to Dismiss at 8, n.8. Defendants argue that the protections afforded by the U.S. Constitution cannot be relinquished by statute or rule, and that the identity of the sovereign exercising authority is irrelevant for the jurisdictional analysis. This Court is bound by Fifth Circuit precedent to the contrary, but this analysis treats the argument in the footnote as valid, imagining a situation where the Trustee served process under Civil Rule 4(k)(1)(A), forgoing reliance on a nationwide service of process statute.

Personal jurisdiction in a diversity case requires a showing of (i) authorization for service of summons and (ii) a constitutionally sufficient relationship between the defendant and the forum ("minimum contacts" and the exercise does not offend traditional notions of fair play and substantial justice). *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). The authorization for service of process would come from Federal Rule of Civil Procedure 4(k)(1)(A), which permits service of process and personal jurisdiction over a defendant who is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." By reference to the reach of the state's courts, the rule implicates the 14th Amendment Due Process Clause, requiring in this case that Defendants have a sufficient constitutional relationship with Texas.[13]

Defendants lack contacts so "continuous and systematic" with Texas as to render them "at home" in Texas, so "general personal jurisdiction" is unavailable. *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014). "Specific personal jurisdiction," however, is available where there is a sufficient "relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). Specific personal jurisdiction also requires that the suit "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb v. Super. Ct. of Cal., S.F.*, 137 S. Ct. 1773, 1780 (2017). The contacts cannot be merely attenuated, but parties who "'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of

---

[13] Because the Texas "long-arm" statute extends to the limits of the U.S. Constitution, it is unnecessary to determine whether the exercise first complies with Texas due process (per Rule 4(k)(1)(A): the jurisdiction of a court of general jurisdiction of the forum), and the Court need only determine whether exercise of personal jurisdiction complies with federal due process under the 14th Amendment, applicable to the states.

their activities." ***Burger King Corp.***, 471 U.S. at 473 (citing ***Travelers Health Assn. v. Virginia***, 339 U.S. 643, 647 (1950)). Finally, per ***Burger King***, even if minimum contacts are found, the exercise of jurisdiction must still comport with "traditional notions of fair play and substantial justice." ***Id.*** at 476.

As discussed above, Defendants directed their actions such that they meet the "minimum contacts" test initially envisioned in ***International Shoe***. Defendants knew that they would be providing legal advice that would be received in Texas, by Texas entities, which could have an impact on Texas residents. Defendants' nearly decade-long relationship with Mueller and the deeproot Entities should subject it to the regulation and sanctions of Texas courts, as it was the sort of "continuing relationships and obligations with citizens of another state" contemplated in ***Burger King***. The claims raised by the Trustee are directly related to the contacts with Texas—the Trustee is suing Defendants for legal malpractice and subordination of a legal services invoice filed in a proof of claim, and the basis for Defendants' minimum contacts are the legal services provided. Finally, exercising jurisdiction over Defendants would not be inherently unfair or put them at a constitutionally significant disadvantage as compared to the Trustee. As discussed above, modern developments in communication and virtual attendance would make it so that this litigation is not "so gravely difficult and inconvenient" that Defendants would be at a "severe disadvantage." ***Burger King*** at 478.

In conclusion, even had the Trustee brought this action in the District Court of the Western District of Texas and served Defendants pursuant to Civil Rule 4(k)(1)(A), the District Court could exercise personal jurisdiction over them for the claims raised by the Trustee.

26

**i.      CPM's filing of a proof of claim in this case waived any objections to the ability of this Court to exercise personal jurisdiction over the firm.**

If a creditor wishes to be included in the distribution of the debtor's assets in bankruptcy, the creditor must file a proof of claim in the main bankruptcy case. While the filing of a proof of claim allows the creditor to recover debts owed by the debtor, it also submits the creditor to the equitable jurisdiction of the bankruptcy court. ***Langenkamp v. Culp***, 498 U.S. 42, 44 (1990). In ***Langenkamp***, the Supreme Court held that a creditor who files a proof of claim "triggers the process of 'allowance and disallowance of claims,' thereby subjecting [the creditor] to the bankruptcy court's equitable power." ***Id.*** (citing ***Katchen v. Landy***, 382 U.S. 323, 336 (1966)). As the Bankruptcy Court for the Eastern District of New York explained, "a proof of claim filed by a creditor is conceptually analogous to a civil complaint, an objection to the claim is akin to an answer or defense and an adversary proceeding initiated against the creditor that filed the proof of claim is like a counterclaim." ***Cruisephone, Inc. v. Cruise Ships Catering Servs. N.V. (In re Cruisephone, Inc.)***, 278 B.R. 325, 330 (Bankr. E.D.N.Y. 2002). With respect to "minimum contacts," filing a proof of claim "waives an individual's due process right to insist on minimum contacts with the forum state before being subject to the court's jurisdiction," even if that proof of claim contains language refusing to waive personal jurisdiction. ***In re China Fishery Grp. Ltd. (Cayman)***, 2017 Bankr. LEXIS 2017 at *17 (Bankr. S.D.N.Y. 2017) (quoting ***Arecibo Cmty. Health Care, Inc. v. Puerto Rico***, 270 F.3d 17, 26 (1st Cir. 2001)).

Here, the Trustee's objection to the legal services Defendants provided aligns with the Trustee's Proof of Claim subordination request—both allege substandard care. For the same reason a bankruptcy court's final approval of an estate professional's legal fees forecloses a legal malpractice claim against the estate professional, ***Osherow v. Ernst & Young, LLP (In re Intelogic***

27

*Trace*), 200 F.3d 382 (5th Cir. 2000) (holding a Trustee's malpractice claims against professionals who had already had their fees awarded by the bankruptcy court were barred by res judicata), the Court believes there is a sufficient nexus between CPM's legal fee proof of claim for pre-petition services and the Trustee's malpractice and attorney fee subordination lawsuit to justify the Court's exercise of personal jurisdiction over CPM based on CPM's filing of a proof of claim for legal services provided.

**B.  THE COURT WILL NOT TRANSFER THIS CASE TO THE SOUTHERN DISTRICT OF OHIO.**

Parties to a bankruptcy adversary proceeding may move to transfer venue to another federal court under either 28 U.S.C. § 1412 (permitting transfer of venue for cases and proceedings under Title 11, incorporated in the Bankruptcy Rules by Fed. R. Bankr. P. 7087) or 28 U.S.C. § 1404(a) (the catch-all venue transfer statute for all civil actions in federal court). Although courts disagree as to which of the two statutes applies to the transfer of "related to" proceedings in bankruptcy court,[14] the elements of each statute are so substantially similar that this opinion will focus on the elements of 28 U.S.C. § 1412, as the parties do in their briefing.

Section 1412 allows a court to transfer a case or proceeding under title 11 to a district court for another district, "in the interest of justice or for the convenience of the parties." The statute is written in the disjunctive, requiring an analysis of whether transfer is warranted *either* in the interest of justice *or* for the convenience of the parties. *Marroquin v. Bean*, 2013 Bankr. LEXIS 1626 at *6 (Bankr. W.D. Tex. 2013). Courts have developed numerous factors to consider under

---

[14] *See, e.g., **In re Adkins Supply, Inc.**,* No. 11-10353-RLJ-7, 2015 WL 1498856, at *2 (Bankr. N.D. Tex. Mar. 27, 2015) (noting "the courts are split on which statute controls the venue-transfer of a 'related to' proceeding" and collecting cases in both directions).

each disjunctive part of the statute. This Court need not give equal weight to every factor, and the decision to authorize a transfer of venue is up to the court's discretion and is to be done on a case-by-case basis. ***In re Positron Corp.***, 541 B.R. 816, 818 (Bankr. N.D. Tex. 2015).

> *A) The interest of justice is not served by transferring the adversary.*

Judge Christopher Mott has articulated factors to consider when analyzing a motion to transfer under 28 U.S.C. § 1412. ***Think3 Litig. Trust v. Zuccarello (In re Think3, Inc.)***, 529 B.R. 147, 209 (Bank. W.D. Tex. 2015).[15] These factors include:

1) Efficiency and economics of estate administration;
2) Presumption in favor of the "home court";
3) Judicial economy and efficiency;
4) Fairness and the ability to receive a fair trial;
5) The state's interest in having local controversies decided within its borders;
6) Plaintiff's original choice of forum.

***Id.*** After an analysis of Defendants' Motion to Transfer Venue under these factors, this Court finds that transfer is not appropriate in the interest of justice.

---

[15] At the hearing on these motions, counsel for Defendants cited three cases which, in their eyes, supported a transfer in this case. Those cases were as follows: ***American Contractors Indemnity v. ECI Construction Co.***, 2008 WL 11350197 (N.D. Tex. 2008) (non-bankruptcy fraud action where district court transferred under 28 U.S.C. § 1404 using the public-private interest factors test); ***Martinez v. Hutton (In re Harwell)***, 381 B.R. 885 (Bankr. D. Colo. 2008) (transferring action to Florida after weighing the articulated factors where attorney-defendant's misappropriation of sale proceeds occurred in Florida and Florida tort law was implicated); ***Couri v. Fisher (In re JCC Capital Corp.)***, 147 B.R. 349 (Bankr. S.D.N.Y. 1992) (transferring a malpractice action to California where a virtually identical action was pending in California state court and all witnesses and documents were located in California). While all three cases were situations where a federal court granted a transfer based on a test substantially similar to that in ***Think3***, each factual scenario of the cases is distinguishable from this adversary. In ***Couri***, a parallel state court action was pending in California, and all the witnesses and documents were there. In ***American Contractors***, all the key witnesses were in Kansas and the Plaintiff was a California corporation suing in Texas. In the most analogous case of those cited, ***Martinez***, the bankruptcy judge called the decision to transfer "a close question," even where *all* of the operative facts occurred in the transferee forum and transferee forum law would be applied. Nothing similar presents itself in this adversary.

### (1) Efficiency and economics of estate administration[16]

The first factor asks whether the transfer would be in the best interests of the bankruptcy estate and its administration. It has been referred to by some courts as the most important factors in the "interest of justice" analysis. *Id.* This assessment follows with some of the primary roles of the bankruptcy court being to oversee the expeditious and efficient administration of the bankruptcy estate and to protect the interests of all parties to the bankruptcy, including creditors unrelated to the adversary action.

The Trustee rightly points out that the costs involved with litigating this action in Ohio would negatively impact the efficiency and economics of estate administration in the deeproot jointly administered bankruptcy cases. The Trustee might have to hire local Ohio counsel to litigate the action and might have to travel to Ohio for discovery and hearings. The more resources the Trustee spends prosecuting this claim, the smaller the recovery for the creditors in the deeproot cases.

Defendants counter that were this action to remain in the Western District of Texas, the Trustee could have to pay for the travel of expert witnesses from Ohio, as there would need to be a showing that Defendants breached the standard of care held by other Ohio attorneys. Even presuming Ohio law governs and all the experts in Ohio law live in Ohio, it is unlikely that this cost (of flying experts to Texas from Ohio) would outweigh the costs of travel for the Trustee,

---

[16] Just as the second ***Peay*** factor inherently favors defendants in the personal jurisdiction analysis (by only asking about negative effects on defendants), this factor inherently favors trustees (by only asking about negative effects on the bankruptcy estate).

Mueller, deeproot Entities' witnesses, Texas State Securities Board witnesses and the other Trustee witnesses from Texas to Ohio, were trial to be held there. This factor weighs against transfer.

### (2) Presumption in favor of the home court.

As noted in *Think3*, a presumption exists that the "district in which the underlying bankruptcy case is pending is the appropriate district for determination of an adversary proceeding." *Id.* This factor weighs against transfer.

### (3) Judicial Efficiency and Economy

Defendants argue that because the case requires the application of Ohio law (which the Court will presume is true for the purposes of this analysis), this factor favors transfer. As discussed above regarding the Motion to Dismiss however, while this Court would have to learn and apply Ohio legal malpractice law (which appears substantially similar to Texas's legal malpractice law), the Ohio court would similarly have to learn the extensive facts underlying the bankruptcy cases and their causes (the Court has presided over these cases and its adversaries since 2021). *See Think3* at 210 ("a 'learning curve' applies to both the law and facts of a case…"). Because both this Court and the Ohio court would have a "learning curve," this factor is arguably neutral. But when combined with the fact that Ohio malpractice law is substantially similar to Texas malpractice law, this Court's legal learning curve would not be as steep as an Ohio court's factual learning curve, favoring retention of this action.

### (4) Fairness and the ability to receive a fair trial

This factor is neutral. The factor requires the transferor court to consider whether the transferee court would provide a fairer trial, and parties seeking transfer must produce evidence showing that the transferor court has a predisposition to rule in favor of one party or another. *Id.*

31

Defendants have not produced any such evidence. Defendants have only pointed to the age of Concilla and Federico, arguing that because travel would be difficult for the two septuagenarians, one of whom has "significant health issues," it would be "prejudicially unfair" to require them to litigate in Texas bankruptcy court. The Court would note that the Trustee is of a similar age and graduated from law school at the same time as Defendants Concilla and Federico.

This evidence does not meaningfully show that this Court has a predisposition to rule in favor of one party or another. Defendants' age could play a part in the "convenience of parties," but it has no bearing on the fairness of the tribunal. This factor is neutral.

### (5) The state's interest in having local controversies decided within its borders

While it is true that states have a great interest in regulating and disciplining the members of their bar, this is a legal malpractice lawsuit, *not* a disciplinary matter. Texas has a great interest in protecting its citizens from torts, including malpractice committed by out-of-state attorneys. *Burger King*, 471 U.S. at 473 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."). While the work done for the deeproot Entities may have been conducted within Ohio's borders, the federal securities legal work received and used in Texas allowed Mueller and deeproot to operate a Ponzi scheme within Texas borders and to perpetuate a fraud on Texas residents. Ohio legal malpractice law may provide controlling law for this dispute, but controlling law does not make an "intra-state controversy" a "local controversy." The key term here is "local controversies." While the lawyers and law firm providing the federal securities advice may reside in Ohio, the impacts of that "nationwide" advice were mostly felt in Texas, as most of the deeproot Entities' investors were Texas-based. This factor favors retaining the adversary.

32

### (6) Plaintiff's original choice of forum

This factor inherently weighs against transfer but is a reminder to the Court to give some deference to the plaintiff's choice of forum.

In conclusion, Factors 1, 2, 3, 5, and 6 all weigh in favor of retaining the case, while Factor 4 is neutral. Defendants have not carried their burden to show that transfer is in the interest of justice and therefore the Court will not transfer in the interest of justice.

### B) The convenience of the parties is not served best by transferring this adversary.

The court in *Think3* also laid out the factors to consider in transferring a case for the convenience of parties:

1) Location and proximity of the parties;
2) Ease of access to necessary proof;
3) Convenience of witnesses, including their location and proximity;
4) Location of the assets, including books and records;
5) Availability of subpoena power for the unwilling witnesses; and
6) Expenses related to obtaining witnesses.

*Think3* at 211. All of these factors are neutral, and therefore do not support a transfer to the Southern District of Ohio.

The Trustee is based in San Antonio, Texas, while the Defendants are based in Columbus, Ohio. The three Ohio defendants outnumber the single Texas plaintiff, so that on its face the "proximity of the parties" factor favors transfer to Ohio. But in reality, the proximity of the parties is neutral, as this is a two-party dispute. Concilla and Federico were both partners with the law firm of CPM and operated under CPM's engagement agreement with Policy Services LLC. As such, they are not independent defendants and this Court considers this factor neutral. For the remainder of the factors, Defendants have not shown that transfer is warranted. The necessary

33

proof, assets, and witnesses are claimed by both parties to primarily be in their respective states, with Defendants arguing that the unknown experts necessary for trial reside in Ohio, and the Trustee arguing that the necessary witnesses from the Debtors (Mueller, Mueller's associates, members of the Texas Securities Board) reside in Texas. Defendants also argue that the papers and documentation regarding the representation is in Ohio, favoring a transfer to Ohio. The Trustee argues the same about the Debtor's documentation of the representation, stating that the Trustee also already has possession of the client file originally held by Defendants in Ohio. The remaining factors are therefore neutral.

Although on its face the first factor weighs in favor of transfer (based on the pure math that there are three defendants and one plaintiff), under the facts of this adversary, the Court considers the matter a two-party dispute and considers this factor neutral. Moreover, while the Court *could* transfer on those numerical grounds (3 defendants, 1 plaintiff), the "interest of justice" would appear to strongly favor retaining the adversary and outweigh transfer based on a single factor in the "convenience of parties" test. Of course, the two tests are separate because the statute is stated in the disjunctive. But in this case, were the case to be transferred to the Southern District of Ohio under a "convenience of the parties" analysis, the Trustee could simply file a motion to transfer the adversary back to the Western District of Texas under an "interest of justice" analysis.

It is for this same reason that the Court will not transfer solely the malpractice claim to the Southern District of Ohio. Bankruptcy Rule 7087 allows a bankruptcy court to transfer an adversary proceeding "or any part thereof" under 28 U.S.C. § 1412. Defendants' request to transfer only part of the action, however, seemingly conflates this Court's exercise of personal jurisdiction with its exercise of subject matter jurisdiction, as Defendants argue that transferring part of the

34

action is warranted because of a core/non-core distinction.[17]  But the analysis under 28 U.S.C. § 1412 detailed above applies to the entire action and was not contingent on including the objection to CPM's Proof of Claim. In other words, were this Court to transfer only the malpractice claim, it is unclear why the Trustee would not succeed in filing a motion to transfer the malpractice claim back to Texas under the "interest of justice" factors detailed above.

Therefore, the Court denies the Defendants' Alternative Motion to Transfer Venue.

## V.   CONCLUSION

In conclusion, Defendants have failed to show that this Court cannot exercise personal jurisdiction over them. Whether through Bankruptcy Rule 7004's endowment to the Court of nationwide service of process, or through traditional Civil Rule 4(k)(1)(A), Defendants are subject to the jurisdiction of this Court for its pre-petition actions with the Debtor. In addition, this Court will not transfer part or all of the adversary action to the Southern District of Ohio because it is not in the interest of justice nor for the convenience of the parties.

# # #

---

[17] Defendants' *Stern* warning near the end of its Motion to Transfer is misplaced, especially where Defendants seek transfer to another bankruptcy court bound by *Stern*. *Stern v. Marshall*, 564 U.S. 462 (2011). This Court's inability to enter final judgments only implicates whether a district court may need to finally adjudicate a matter, not the geographical venue of the matter.